and Mr. Murphy, whenever you're ready, we'll hear from you. Good morning. May it please the Court. My name is Earl Stanley Murphy. Since this case began, I have become a partner with the Whitestone, Virginia firm of Dutton, Simmons & Dutton. It's always an honor to be here. I'm delighted to be here on an important case this morning. This case involves a recurring constitutional question about access to the courts. The central issue is whether the restrictive laws of the forum court may slam the doors of justice to a litigant who has vested rights under the laws of a sister state. The issue is not restricted to the Virginia and North Carolina cross-border issue that's present in this case and is present in the Garcia case. I don't know why you say it's restrictive. The accident, there was an injury that occurred on a site in Virginia. Yes, sir. Where an employee was injured by a fellow or a co-employer at the site. Not his own employer, but a co-employer. And under Virginia law, where the injury occurred, they're both treated as statutory employers and can't be sued. And so the court applied that law and said, you can't sue the statutory employer. I don't, it seems to me it's straight up and down. The only hitch could be the application of the Solomon case. We overruled that in Garcia based on the Carroll case. And I don't understand why that isn't just a straightforward application of Virginia law to a Virginia tort. There's a number of answers to that, Your Honor. First of all, it's our belief that Garcia is wrongly decided under. We don't have the power to change that. I mean, that's, you can go in bank on that if you want. But as a panel, we've ruled, at least we've chosen to rule that we follow panel opinions and don't overrule them by panel. We probably have the power, but we don't. And our president says that one panel will apply the law of another panel. And if we need a change, we go in bank. But I'm not even sure that we could change it under general principles of Virginia law. This is a diversity case. This is a diversity case. And we're applying Virginia law to a Virginia accident with respect to an injury that occurred in Virginia. And the suit was filed in Virginia. It seems to me a straight up or down case of choice of law. You apply the Virginia law. Well, we agree that it is a... And under Virginia law, you can't, an employee can't sue his own employer or the statutory employer. The question, Your Honor, is whether the district court applied the correct choice of law rule. And... Well, let me ask you this. When you file a suit in Virginia, Virginia chooses its own tort law, right? It does for the tort. Okay. The issue in the Solomon case, which the Virginia Supreme Court has never overruled, and which has been recognized in a terribly important case called Braxton in North Carolina, recognizes that although lex loci for the place of the tort applies, a Virginia court, and Braxton did a predictive analysis of what the Virginia Supreme Court would do, and under a Renoir analysis, would say that the Virginia Supreme Court would do two things. One, continue to uphold Solomon, which has never been overruled. And two, defer to the place where the compensation was paid, which was the core holding in the Solomon case. And perhaps this is headed to a full panel. But I... Wasn't Mr. Dimitri subject to the Virginia workers' compensation laws when he worked in Virginia? He was. He was. And if he had filed a claim under the Virginia law, it wouldn't have been denied because he was also employed in North Carolina. It would have been denied, if at all, because both states have offset provisions. Correct. So that you don't double pay. That's correct. But he still would have been subjected to Virginia, could have filed his claim in Virginia, and got a Virginia's compensation award. Judge Niemeyer, you've described the factual setting in the Hughes versus Fetter case that we have cited in our brief. That was the exact facts there. And the Supreme Court of the United States opened the doors to the court in Arkansas, which had a much more liberal... But the injury was in a different state there. And whereas here, the injury is in the state of the quorum state. And I think the facts of this case are locked in on Garcia. Isn't Garcia identical to this case? Garcia is very close. How is it different? Forgive me. I'm sorry. I was looking for a factual distinction. I'm not sure I can answer that question. Let me move on. We believe that Garcia was wrongly decided for the reasons I've stated earlier. Did Garcia rely on Carroll? Carroll... Garcia... Supreme Court case, right? Yes, sir. But Carroll was in a line of cases that began with the Pacific Employers case. And it seems to me that the fault of... And I say this with all respect. The fault of what was done in Garcia is that it was a mechanical application of a results-oriented application. And it did not look at the constitutional principles. Because if the court reads the Pacific Employers case, if it reads the Carroll-Lanza case, if you read the Hughes-Fetter case, what happens in each of those cases is that the constitutional principle, and it's stated in Hughes as a strong unifying principle under the Full Faith and Credit Act, opens the doors to courts that have more liberal access to the court. I don't see how this is a Full Faith and Credit Act case. This is a Virginia court applying Virginia law. I say this with respect, Your Honor. Hughes says that it is a Full Faith and Credit Act when it rises to the level of a forum court closing the doors. And the practical issue here is why is this court, why is the result in this case different in Norfolk? The reason in Hughes is because the injury occurred in a different state where the person would have gotten an award. And then the forum state denied the award. And so the forum state failed to give Full Faith and Credit to Missouri. I guess that was the state. I can't quite remember what the states were. But failed to give Full Faith and Credit to the law that applied to the injury. But here we have just the flip side. The injury's in Virginia, and it's under Virginia law, and the court's applying its own law as every state does. The practical argument I was making, Your Honor, is that Mr. Demetrius resides as a North Carolina resident. He was compensated under North Carolina law. He resides in Elizabeth City. Had there been a way to sue this defendant in the district court in Elizabeth City, 31 miles to the south of Norfolk, there would have been an exactly opposite result under an area analysis. And each court would be applying. Because North Carolina law is different, but North Carolina law didn't apply. If the injury occurred in North Carolina, he would have gotten more money. But the injury occurred in Virginia. But the North Carolina district court, sitting in diversity, would apply the Braxton case, which applies how it defines Virginia law in a decision subsequent to Garcia, and in an area analysis would apply the North Carolina rights to the case on this exact case, even though the injury occurred in Virginia. That was the facts of Braxton. And Braxton is factually identical to this case. In Virginia, in Norfolk, where we filed the case 31 miles to the north, the district judge rightly, we believe, relies on Garcia. And we're here asking that that precedent be changed. Well, it seems to me that what you're here to do, I think, is to rehearse your argument in favor of in-bank rehearing, correct? I say that very seriously. And I respond very seriously. Now, you didn't file, if my memory serves me correctly, you didn't file a pre-argument motion for immediate in-bank, right? That's correct. You filed a motion to certify. Is that right? I did. Why didn't you file a motion for immediate in-bank? And I don't mean that as criticism at all. It may be fair criticism. I did not. But that's what you want, right? You want to get past us as quickly as possible so that you can file your motion, because, as Judge Niemeyer says, we can't. We can't do anything. I understand that point. I understand that point. But we think there are important reasons that Garcia was wrongly decided. And perhaps I am making essentially an in-bank argument. But I think if the court will look at the constitutional principles embedded in the full faith and credit clause, Your Honor, which says under the- The full faith and credit would require Virginia to give full faith and credit to North Carolina law, right? I want to make certain I understand your question. The application of the clause, you would advocate that a Virginia court give full faith and credit to North Carolina law. That is exactly our argument. But you have to have North Carolina law applicable before you can do that. And because the injury in this case occurred in Virginia, Virginia is following the traditional notion that you apply Virginia to North Carolina law. But Virginia has- I'm sorry. With respect, I've interrupted, Your Honor. Virginia, though, has historically and traditionally looked to the place where compensation was paid. And that is the ruling in the Solomon case. And that was the ruling that a North Carolina case- Solomon facts were pretty extreme, too. I mean, everything was in Pennsylvania. And the guy was driving a vehicle from Pennsylvania in the course of his- for his employer and has an automobile accident down here. And since he's an employer, Virginia said, hey, this all belongs up in Pennsylvania. But that's- here we actually were on a work site, construction site, where the employer had co-employees and co-employers. Where? Co-employees. Yeah. Co-employers. I don't know if that's enough to distinguish Solomon. But in Garcia, we said that Carroll changed the rules. And Virginia hasn't had an occasion to consider the application of Carroll to its Solomon decision, which was what, 1932 or something? Thirty-two. But Carroll ignored Hughes versus Fetter, which is in that same line, and which is constitutionally and from a principal constitutional standpoint, the correct analysis. And the point with Solomon's is the choice of law rule in Virginia in these cross-border compensation cases has been since 1932. You look to the place where compensation was paid to determine whether there is a right against third parties. Virginia Supreme Court's never changed that. Braxton case, which is North Carolina law, says that in- relied expressly on Solomon and said that the right to proceed under the North Carolina statute against a third party was preserved. And that- and predicted that the Virginia Supreme Court would allow it to proceed. I have just a minute left. I would like to talk just briefly about any antagonism that might exist between the two statutes. I am not sure if my constitutional view is correct. I'm not sure there's ever a balancing that goes on. I think if there's a vested right, the court cannot close its door to the laws of a sister state. But when you read these cases, there is some implicit interest balancing. And I think it's fair to ask whether there is anything in Virginia law that is offensive to the risk allocation that we're asking for in this case. And for the reasons we stated in our brief, I think that the Mid-Atlantic Safeway case says that it is not. The statute itself, which allows an employer to pay benefits over and above what the statute says, is not. And one of the important things that is going on in these cases is risk allocation is premium setting for these carriers. And there's a segregated interest in this case. And I think it's terribly important to apply the Hughes v. Feder rule. And if I'm doing it in front of a larger panel, perhaps I will be. And I reserve five minutes to respond. All right. Thank you, Mr. Murphy. Ms. Giroux or Giroux? Giroux. Giroux. OK. May it please the court, my name is Danielle Giroux, and I represent the Appali East-West Construction, Inc. And East-West requests that this court affirm the district court's dismissal of the action for lack of subject matter jurisdiction because it was barred by Virginia's Workers' Compensation Act. Why is it subject matter jurisdiction? I thought the diversity gave the court the power. It would be under. But our motion to dismiss was under Rule 12b-1 for lack of subject matter. I understand. I'm just wondering why it shouldn't be 12b-6. And I think the court addressed that and said that and addressed that in a footnote in the opinion, said under either framework, the outcome would still be the same. Some courts treat it as a 12b-1 because the Workers' Compensation statute provides exclusive remedy. And so, arguably, it could be a subject matter jurisdiction. But it's like an immunity. That's true. It seems to me under the Supreme Court Steel Company case, you look to the power of the court to act and where it derives its power. And here it derives its power in 1332, and nobody's challenging that, are they? And that's true. And then some courts have said it should be properly brought under a 12b-6 motion. OK. And ultimately, the court said no matter how I look at this, we reach the same conclusion. Here, Mr. Demetrius does not dispute that Virginia choice of law rules apply, although there's some dispute about what that is, or that if the Virginia Workers' Compensation Act applies, that his lawsuit would be barred. As this court has pointed out, the federal district court hearing a case in a diversity action would apply the law of the form in which it sits. And in Virginia, it would apply the place of the wrong rule in this tort action. Mr. Demetrius relies on this 1932 case, Solomon, from the Supreme Court of Virginia. But as has already been discussed, that was addressed by this court in Garcia, a very similar case where the plaintiffs were… Who should have the last word on what Virginia law is? I think that a federal court is equally capable of deciding what Virginia law is. Oh, really? You think so? I do. I don't think so. I think we've opined about state law, but the Supreme Court of the states say, we'll tell you what our law is, no matter what we say. And so the question is, Solomon is still good law in Virginia, right? It's not. It's not? It's not. Well, what case overturns Solomon? That would be, well, since the Carroll case. I mean state, the Supreme Court of Virginia. There is no state Supreme Court of Virginia case that addresses whether Solomon is still good law. Your argument has to be that Carroll overruled it. Correct. And Carroll is a… U.S. Supreme Court case. U.S. Supreme Court case. Okay. And since that case, then all of the subsequent cases, there are no Supreme Court of Virginia cases after that addressing the issue, but every Fourth Circuit case, Eastern District and Western District applying Virginia law has said that Solomon is no longer good law. Also, Solomon, because it was 1932, and I will admit that my workers' compensation knowledge regarding the act in 1932 is somewhat limited, but the court and the way it described what the act was at the time is different than the way the act is now. The Solomon court in making its holding said the acceptance of a ward under it by an employee constituted an election, which under the act barred him from proceeding against a negligent third person. The way the act is now, it's not an election of remedies. It's an exclusive remedy. That's what the law is. And so in that case where the court was emphasizing since the plaintiff took an election, did not take an election of the Virginia act, therefore he's not barred, that's treated differently now. We have an exclusive remedy in the Virginia act, and the law has changed since 1932 where the key factor is, is the injured party eligible for benefits under the Virginia Compensation Act? It doesn't matter whether he's actually elected those benefits. He could, in the case of Mr. Demetrius, for example, he could elect, as he did, North Carolina benefits. And the only way he could actually have tested that, if I understand where we are, and admittedly this is a little absurd, but as my colleagues know, I'm not reluctant to be a little absurd sometimes. If Mr. Demetrius had moved to Virginia after the accident, and taken away diversity jurisdiction, and sued your client in Virginia state court, it could have gotten the issue before the Virginia Supreme Court. That's possible, yes. And possibly the Virginia Supreme Court would say, oh no, we're going to apply the law of North Carolina here. Even though the case is pending in Virginia, and even though, as you just said correctly, he was eligible under the Virginia Workers' Compensation Act. He was eligible under both? Right, no question about it, under both. But he elected under North Carolina, and there's at least the faint possibility that Virginia would elect to apply the third party action principles of North Carolina rather than... I don't believe so. You don't think so? If the accident still happened in Virginia, whether he moved after the accident to Virginia and filed in state court, Virginia law would still apply there. Not Virginia Workers' Compensation. But that's not the basis for the cause of his action. It would still be a tort action, and in Virginia, the Virginia law would apply to the tort action. The fact that he may have elected benefits for workers' compensation wouldn't change... But the immunity would arise under North Carolina law. The immunity would still arise under Virginia. Virginia law would still apply to the state court action. But isn't that the question? That's the question. Would Virginia apply its own law under circumstances where compensation is paid under another state? Yes, because it doesn't matter. It's irrelevant where he accepted compensation. Again, he could get compensation both from North Carolina and then Virginia if it were above and beyond what he received from Virginia. So that's why the courts have said it doesn't matter whether he's elected benefits at all, whether he's elected benefits from both, or one or the other, it's where was he eligible for benefits under Virginia's Workers' Compensation Act. And if the answer to that is yes, then his claim against a statutory employer or a statutory co-employee would be barred under Virginia law, whether he brought it in state court or, as in this case, under diversity action. I do want to address the Hughes v. Fetter case. And the court has already pointed this out, but it was an issue having not with what we have here, but a situation where an accident happened in Illinois, but all the parties were from Wisconsin, and the administrator of the estate filed... You were close. Midwest is the best I can claim. But they filed a wrongful death claim arising out of Illinois law, and so it's the application of Illinois law. And so, therefore, the problem in that case was that it was wrong. What was wrong with the statute was that it discriminated against the nonresidents. It was the application of Illinois law that the cause of action was arising under. But, in fact, the Hughes case even said that every state is entitled to enforce its own statutes, and that's what we have here. And, likewise, in the U.S. Supreme Court, in the Carroll decision, said that the full faith and credit clause does not strip a state of its ability to enforce its act against nonresidents injured within a case. But the learning on the full faith and credit there is that the accident did have different law applicable to it. That's right. And the court said you have to get full faith and credit. That's correct. And that's why that Hughes case isn't what we have in this situation. Whereas nobody can claim that North Carolina law applied to the accident here. That's correct. The injury, the tort. That's correct. And the last issue I wanted to address is the Safeway case that counsel raised. And, in this case, again, it's not applicable to this situation because it merely held that the act doesn't invalidate an indemnification agreement between a plaintiff's employer and a tortfeasor. It did nothing to take away from the Workers' Compensation Act in Virginia. They were just asserting an indemnification claim. It wasn't, for example, a contribution claim, which would have been barred. So, therefore, that case itself doesn't stand for, it doesn't suggest anything having to do with Virginia's position on whether the Workers' Compensation Act applies in a situation relating to an out-of-state resident. That's all my argument, unless the panel has any further questions. Thank you very much. Mr. Murphy. Thank you, Your Honor. I want to begin with the question that you asked about this Hughes case. The Hughes case is clear that the right of action that was being enforced there was an Illinois right of action being enforced in Wisconsin. And Wisconsin applied this local rule and refused to do it. Because the Illinois law applied to the injury in that case in another state, and you have to get full faith and credit. Whereas a tort committed, North Carolina law does not apply to a tort taking place in Virginia. I agree with that, but that ignores a part of the conflict of law analysis here. As I discussed earlier on the other question that was raised, it had to do with immunities. And that, to me, really is where the conflict is here. Would you be better off in Virginia State Court? I may have been. I may have been. There were economic reasons to file it in front of the court. Oh, sure. But my essential argument is that beginning with this Clapper case, going to the Pacific Employers case, going to Carroll and Lonza and Hughes and Fetter, there's a continuum. And what the United States Supreme Court says on that continuum is that if you are a forum court that is opening your doors to a claim that may be offensive to a distant court, a sister state, you never even implicate full faith and credit. Because that's an example of the forum state enforcing its own law. You only run into a problem, as you do in Hughes versus Fetter, where you are closing the doors. And there you end up with this essential and exquisite constitutional question of whether a forum court is denying full faith and credit to a right that exists under the laws of a sister state. And it seems to me that the balancing needs to be made. But we're not talking about compensation laws. We're talking about tort law. And we're talking about you would have to be able to argue that North Carolina would apply its tort law to allow a suit against a third-party employer. And North Carolina would allow such a suit. But that law is not applicable to an injury that occurs in Virginia. Virginia has a tort law that says you can sue – you can't sue a third-party employer if it's a co-employer, the statutory employer. And which seems to me it's just a – what if they said you could sue and tort, but your damages are limited to $300,000 in Virginia? You'd still be bound by that limitation, even though North Carolina didn't have such a limitation. But the essential question, as I say, has to do with privileges and immunities. The right here, the vested right here, is by being paid compensation in North Carolina. That compensation scheme is established with reference to principles of risk allocation. He's not suing under a North Carolina compensation law. He got his North Carolina compensation, and that's a different scheme. We're talking about a tort where you get damages in traditional tort law for the injury. Negligence, I guess, would be in this case. I'm sorry. And that suit arose out of conduct in Virginia. It certainly did. Okay. But the right that I am saying is being denied by the forum court, by the district court here, is the right to pursue these third parties. And that is a constituent part of the compensation that this man was paid. It's a constituent part of the carrier's decision in setting its premiums, and it's a constituent part of the bundle of rights that he has under North Carolina law that is being denied enforcement in Virginia. Braxton says it. Solomon says it. And I don't think Solomon ever has been overruled. I think my time has just run out.  Thank you, Mr. Leitch. Thank you very much. All right. We'll come down and Greek Council will proceed to the last case.
judges: Paul V. Niemeyer, Roger L. Gregory, Andre M. Davis